**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
MOOLEC SCIENCE SA,

              Plaintiff

                      v.

EARLYBIRDCAPITAL, INC.,                    Case No.

              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

**<u>COMPLAINT</u>**

LINKLATERS LLP
James R. Warnot, Jr.
Patrick C. Ashby
Elizabeth M. Raulston
Stephanie R. Sebastian
1290 Avenue of the Americas,
New York, NY 10104
(212) 903-9000
(212) 903-9100 (fax)

*Attorneys for Moolec Science SA*

Plaintiff Moolec Science SA ("Moolec" or "Plaintiff"), by and through its attorneys, Linklaters LLP, files this Complaint against Defendant EarlyBirdCapital, Inc. ("EarlyBird" or "Defendant") for declaratory judgment, and alleges, upon information and belief, as follows:

## NATURE OF THE ACTION

1.      Moolec seeks declaratory judgment that EarlyBird is entitled to $1,417,802.21 under the plain and unambiguous terms of its contract, and not to the approximately $3,000,000 it has continued to seek.  EarlyBird's transparent attempt to renegotiate its fee is causing on-going harm to Moolec, which has been prevented from accessing capital held in escrow pending resolution of this manufactured dispute.

2.      This dispute arises in connection with a successful De-SPAC transaction, which is a process by which a private company goes public by merging with a special-purpose acquisition company, or a SPAC.  Here, Moolec closed on December 30, 2022 (the "Closing Date"), pursuant to the terms of the Business Combination Agreement (the "BCA"), on a business combination with LightJump Acquisition Corporation (the "SPAC") and Moolec Science Limited (the "Company") (the "Business Combination").  On January 3, 2023, Moolec began trading on Nasdaq.

3.      EarlyBird provided limited underwriting/marketing services in connection with the transaction, and the fee dispute centers on the amount EarlyBird is due under the terms of the Business Combination Marketing Agreement (the "Marketing Agreement").

4.      On or about January 8, 2020, EarlyBird and the SPAC entered into the Marketing Agreement, pursuant to which EarlyBird was engaged to undertake various marketing activities related to the transaction.

5.      On or about June 14, 2022, EarlyBird, the SPAC, and LightJump One Founders, LLC (the "Sponsor") entered into an Amendment to the Marketing Agreement (the "Marketing Amendment," together with the Marketing Agreement, the "Agreement"), which makes Moolec a

third-party beneficiary to the Agreement, and plainly and unambiguously sets out EarlyBird's total compensation, which is a cash fee.

6.     The cash fee consists of:

    a.  a fixed $1 million fee, which is not in dispute;

    b.  up to $20,000 for reasonable costs and expenses, which is not in dispute; and,

    c.  a variable fee of 20% of the aggregate gross proceeds (up to $3,830,000) of the amount (i) held in a trust account on the day of the redemption deadline indicated in the proxy statement filed by the SPAC in connection with the Business Combination, and (ii) of the financing *received by the SPAC* in connection with the Business Combination.

7.     Despite the plain language of the Agreement, the amount owed under the variable fee is in dispute.  There is no dispute with respect to the first component of the variable fee (20% of the amount held in the trust account), and Moolec agrees that EarlyBird is entitled to $397,802.21.[1]

8.     The remaining component of the variable fee, however, EarlyBird purports to dispute.  The SPAC did not receive *any* proceeds in connection with any financing, which by plain operation of the payment provision, means that no additional cash fee is owed to EarlyBird (20% x $0= $0).  The maximum fee owed to EarlyBird, therefore, is $1,417,802.21.

9.     Despite the plain language of the payment provision, on December 29, 2022, EarlyBird sent the SPAC an invoice for $3 million, which was immediately disputed by both the SPAC and Moolec.

---

[1]     There is a strong argument that EarlyBird is only entitled to $104,449.76, as there was only $522,248.81 in the trust account on December 22, 2022, the deadline specified in the Marketing Agreement.  However, for purposes of this action, Moolec is willing to agree that the portion of the fee related to the amount held in the trust account is $397,802.21.

10.     EarlyBird's inflated compensation request is not based on any attempted interpretation of the plain language of the Agreement.  Instead, it is a naked attempt to renegotiate its fee due to the markedly different economic environment in which it now finds itself.

11.     EarlyBird brands itself as "a boutique investment bank that has developed an expertise in working with Special Purpose Acquisition Companies (SPACs)."[2]  The significant challenges facing the SPAC market in 2022, and widely predicted to continue in 2023 given macroeconomic headwinds and tighter access to capital, has been well documented.[3]  The change in EarlyBird's financial outlook, however, does not allow it to renegotiate the plain terms of the Agreement's payment provision.

12.     EarlyBird also understands, and in fact intends, the harm it is causing Moolec. Because Moolec declined to pay the inflated compensation fee of $3 million, EarlyBird has refused to provide its required consent to release any and all escrow funds to Moolec that are held in the trust account (even those above and beyond what EarlyBird purports to claim), preventing Moolec from accessing its own funds, in a misguided attempt to obtain leverage to renegotiate its fee.

13.     Moolec respectfully requests a judicial declaration that EarlyBird is entitled to a maximum of $1,417,802.21 pursuant to the Agreement, and an order for all of its reasonable attorneys' fees and expenses, as provided for by the Agreement.

**PARTIES**

14.     Plaintiff Moolec is a Grand Duchy of Luxembourg limited liability company with its principal place of business located at 17 Blvd FW Raiffeisen Luxembourg, 2411 Luxembourg.

---

[2]     EarlyBirdCapital, https://www.earlybirdcapital.com (last visited Feb. 9, 2023).

[3]     *See, e.g.*, Bailey Lipschultz & Lydia Beyoud, *Great SPAC Crash of 2022 Deepens as Investors Cash Out in Droves*, Bloomberg (Dec. 2022), https://www.bloomberg.com/news/articles/2022-12-14/great-spac-crash-of-2022-deepens-as-investors-cash-out-in-droves; Amrith Ramkumar, *The SPAC Ship Is Sinking. Investors Want Their Money Back*, Wall St. J. (Jan. 21, 2022), https://www.wsj.com/articles/the-spac-ship-is-sinking-investors-want-their-money-back-11642761012.

15.     Defendant EarlyBird is a Delaware corporation with its principal place of business located at 366 Madison Ave 8th floor, New York, NY 10017.

## JURISDICTION AND VENUE

16.     This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

17.     The Court has personal jurisdiction over the Defendant because its principal place of business is in this State.

18.     Venue is proper in this District under 28 U.S.C. § 1391(b), because a substantial portion of the events described herein occurred in this District, including at Defendant's principal place of business.  Furthermore, pursuant to Section 13 of the Marketing Agreement, once a dispute arising from it has been brought in this District, EarlyBird irrevocably submits to the exclusive jurisdiction of this District Court.

## BACKGROUND

### *Overview of the De-SPAC Transaction*

19.     On December 30, 2022, pursuant to the terms of the BCA, Moolec closed on the Business Combination with the SPAC and the Company.

20.     A true and correct copy of the BCA is attached as **Exhibit A**.

21.     On the Closing Date, the SPAC and the Company became subsidiaries of Moolec and all shareholders of the SPAC and the Company became shareholders of Moolec.  The issued ordinary shares of the Company held by the Company's shareholders were transferred to Moolec, and the Company's shareholders were issued Moolec ordinary shares.

22.     Following the business combination of Moolec with the SPAC, Moolec began trading on Nasdaq on January 3, 2023.

### *The Backstop Agreement*

23.     Concurrently with the execution of the BCA, Moolec, the Sponsor, the Company, Union Group Ventures Limited ("UGVL"), Theo I SCSp ("Theo," and together with UGVL, "Owners"), and UG Holdings, LLC, entered into a backstop agreement (the "Backstop Agreement").

24.     A true and correct copy of the Backstop Agreement is attached as **Exhibit B**.

25.      Under the Backstop Agreement, the Sponsor and Owners agree to backstop an aggregate amount up to $10 million, conditioned upon the closing of the Business Combination.

26.     The Backstop Agreement provides that the Sponsor and Owners make their contribution commitment either in cash in immediately available funds contributed to Moolec, or through arranging so-called "Redemption Reversals," as defined in the Backstop Agreement, in exchange for Moolec ordinary shares.

27.      The Backstop Agreement also allows the Sponsor to elect to have the Owners fund all or any portion of the Sponsor's Contribution (the "Election Clause").  If the Sponsor exercises its Election, the Sponsor is only required to fund an amount in cash equal to the amount of its Contribution commitment minus the election amount.  The Sponsor must then transfer to the Owners SPAC common stock shares as consideration, and each of the Owners will then be required to fund 50% of the election amount prior to the Closing pursuant to Section 1.02 of the Backstop Agreement.

28.     On the Closing Date, the parties to the Backstop Agreement signed a Memorandum of Understanding in order to implement the Backstop Agreement.

29.     A copy of the Memorandum of Understanding is attached as **Exhibit C**.

30.     The Memorandum of Understanding states that "none of the funding under the Backstop Agreement [is] intended for SPAC" and the "parties acknowledge that Owners will be contributing cash to [Moolec]."  Memorandum of Understanding at 1.

31.     On the Closing Date, following a number of "Redemption Reversals," $1,989,011 remained in the Trust Account, which triggered the obligations of the Sponsor and the Owners under the Backstop Agreement to fund $8,010,989 to Moolec.

32.     Pursuant to the Election Clause, the Sponsor transferred 200,276 Sponsor shares of SPAC common stock to each of UGVL and Theo equal to the Sponsor's commitment, with each Sponsor share of SPAC common stock then valued at $10. At the Closing Date, pursuant to the Backstop Agreement and Memorandum of Understanding, Theo and UGVL each transferred $4,005,520 to Moolec and in turn, each received 400,552 newly issued Moolec ordinary shares.

33.     Under the terms of the Backstop Agreement and Memorandum of Understanding, no funds were ever owed to the SPAC.  And no funds were ever paid to the SPAC.  All funds owing under the Backstop Agreement and Memorandum of Understanding – $8,010,989 – were paid to Moolec.

### *The Marketing Agreement*

34.     On January 8, 2020, the SPAC and EarlyBird entered into the Marketing Agreement, whereby EarlyBird agreed, among other things, to "introduce the Company to potential investors to purchase the Company's securities in connection with the Business Combination."  Marketing Agreement, Section 1.

35.     A copy of the Marketing Agreement is attached as **Exhibit D**.

36.     The Sponsor and EarlyBird subsequently entered into the Marketing Amendment on June 14, 2022, which sets forth specific and unambiguous changes to EarlyBird's compensation.

37.     A copy of the Marketing Amendment is attached as **Exhibit E**.

38.     The Marketing Amendment states that EarlyBird's fee consists of a fixed fee of $1 million, as well as a variable cash fee of 20% of the aggregate gross proceeds (up to a maximum of $3.83 million) (i) held in the trust account on the day of the redemption deadline, and (ii) *received by the SPAC* in any financing in connection with a Business Combination.

39.     The full text reads:

> *As compensation for the foregoing services, the [SPAC] will pay to [Earlybird] and/or its designees an amount in cash (the "Cash Fee") equal to (i) 20% of the aggregate gross proceeds (up to a maximum of $3,830,000) (x) held in the Trust Account (defined below) calculated on the day of the redemption deadline indicated in the proxy statement to be filed by [the SPAC] in connection with the Business Combination, after first taking into account (A) payment to holders of shares of common stock sold in the IPO who duly exercised their redemption rights in connection with the Business Combination and then reducing the amount held in the Trust Account by (B) any additional payments included in the Trust Account to accommodate any extension of the time period for the Company to consummate a Business Combination (and not paid to redeeming holders pursuant to the immediately preceding clause (A)) and (y) received by the [SPAC] in any financing in connection with a Business Combination regardless of the source of such funds, plus (ii) $1,000,000.*

> Marketing Amendment ¶ 1.

40.     Pursuant to the Marketing Agreement, EarlyBird is also entitled to "up to $20,000 for its reasonable costs and expenses incurred in connection with the performance of its services." Marketing Agreement, Section 2.

41.     Moolec is designated as a third-party beneficiary of the Agreement, "entitled to the rights and benefits" of the Agreement and "may enforce the provision . . . as if [Moolec] were a party" to it.  Marketing Amendment ¶ 8.

42.     The Agreement provides that "[i]n the event [a] dispute is brought by a party in the courts of the . . .  United States District Court for the Southern District of New York, each party irrevocably submits to such jurisdiction, which jurisdiction shall be exclusive."   Marketing Agreement, Section 13.

43.      Furthermore, "[t]he parties agree that the prevailing party(ies) in any such action shall be entitled to recover from the other party(ies) all of its reasonable attorneys' fees and expenses relating to such action or proceeding and/or incurred in connection with the preparation therefor."  *Id*.

### *The Dispute Regarding EarlyBird's Compensation Fee*

44.     On December 29, 2022, the day before the Closing Date, EarlyBird sent the SPAC an invoice for $3 million.

45.     The SPAC and Moolec immediately disputed the invoice and requested a correct invoice in the amount of $1,124,449.76, consisting of the $1 million fixed fee, a variable cash fee of $104,449.76, which represents 20% of the amount in the Trust Account on December 22, 2022 ($522,248.81), and $20,000 for reasonable costs and expenses.

46.     Neither Moolec nor EarlyBird dispute that EarlyBird is due a fixed fee of $1 million, plus $20,000 for reasonable costs and expenses.

### *Variable Fee: (x) 20% Held In Trust Account on Redemption Deadline*

47.     EarlyBird asserts that the date of calculation of EarlyBird's 20% of the Trust Account pursuant to Paragraph 1(b)(i)(x) should be the Closing Date.

48.     The Marketing Amendment specifically states, however, that EarlyBird is due 20% of the gross proceeds in the Trust Account "on the day of the redemption deadline indicated in the

proxy statement to be filed by LJ in connection with the Business Combination."  Marketing Amendment ¶ 1.

49.     The SPAC filed the proxy statement on December 5, 2022.

50.     A copy of the proxy statement is attached as **Exhibit F**.

51.     The proxy statement stated that the redemption deadline was December 22, 2022. Exhibit F at 19.

52.     On December 22, 2022, there was $522,248.81 in the Trust Account.

53.     Therefore, the plain language of Paragraph 1(b)(i)(x) of the Marketing Amendment yields a $104,449.76 cash fee owing to EarlyBird (20% x $500,000 = $104,449.76).

54.     Nevertheless, Moolec acknowledges that Paragraph 1(b)(i)(x) provides that the amount in the Trust Account on the redemption deadline is calculated "after first taking into account (A) payment to holders of shares of common stock sold in the IPO who duly exercised their redemption rights in connection with the Business Combination and then reducing the amount held in the Trust Account by (B) any additional payments included in the Trust Account to accommodate any extension of the time period for the Company to consummate a Business Combination (and not paid to redeeming holders pursuant to the immediately preceding clause (A))."  Marketing Amendment ¶ 1.

55.     While this language does not alter the plain language of Paragraph 1(b)(i)(x), which requires the variable trust account calculation to occur on the redemption deadline, not the Closing Date, Moolec recognizes that significant redemption reversals ($1,466,762.24) took place between the redemption deadline (December 22, 2022) and the Closing Date (December 30, 2022), due to the increase in the share price.

56.     Therefore, Moolec agrees, for purposes of this action, that Paragraph 1(b)(i)(x) of the Marketing Amendment should be read to capture the full amount in the trust account on the date of closing ($1,988,011.05), yielding a $397,802.21 cash fee owing to EarlyBird (20% x $1,988,011.05= $397,802.21).

57.     As a result, there is no dispute as to the amount of the variable fee owing based on the amount held in the trust account.

***Variable Fee: (y) 20% Received By SPAC***

58.     The only purported dispute regarding EarlyBird's fee relates to the variable fee of 20% of the gross proceeds *received by the SPAC* in any financing in connection with the Business Combination.  There is no factual dispute, however, that the SPAC did not receive any financing.

59.     Nevertheless, in support of its invoice for $3 million, in various emails with Moolec, EarlyBird contends that it is due 20% of the funds *Moolec* received under the Backstop Agreement.

60.     Under the plain terms of the Marketing Amendment's payment provisions, EarlyBird is only entitled to 20% of the gross proceeds "received by the [SPAC]."  Marketing Amendment ¶ 13.

61.     At no point did the SPAC receive – nor was it ever entitled to receive – any proceeds pursuant to the Backstop Agreement.  Instead, pursuant to the Election Clause, Theo and UGVL each transferred $4,005,520 to Moolec and in turn, each received 400,552 newly issued Moolec ordinary shares.  *Infra* at 32.

62.     Further, the SPAC did not receive any proceeds in connection with any other financing, associated with the Business Combination or otherwise.

63.     Therefore, Paragraph 1(b)(i)(y) of the Marketing Amendment yields no additional cash fee owing to EarlyBird (20% x $0 = $0).

64.     In total, therefore, pursuant to the plain language of the Agreement, EarlyBird is entitled to a maximum cash fee of $1,417,802.21 which consists of:

    a.   a fixed $1 million fee, which is not in dispute;

    b.   $20,000 for reasonable costs and expenses, which is not in dispute; and

    c.   a variable fee of 20% of the gross proceeds held in the trust account at closing, which equals $397,802.21, and 20% of the gross proceeds of the financing received by the SPAC in connection with the Business Combination, which equals $0.

65.     EarlyBird's assertion that it is due $3 million ignores the plain and unambiguous language of the Marketing Amendment and represents an impermissible attempt to renegotiate the Agreement.

66.     As a result of the purported dispute, EarlyBird has withheld its required consent to Continental Stock Transfer & Trust Company ("Continental") – the SPAC's transfer agent and warrant agent – for the transfer of all outstanding funds held in escrow in the Trust Account (even those funds above and beyond what EarlyBird asserts it is owed), preventing Moolec from accessing and making use of these funds.  EarlyBird's actions are intended to damage, and have in fact damaged, Moolec.

## COUNT 1
## DECLARATORY JUDGMENT

67.     Moolec repeats, realleges, and incorporates by reference the allegations set forth in paragraphs 1 through 66 as though fully set forth herein.

68.     The Sponsor and EarlyBird formed a binding contract, the Marketing Agreement, as amended by the Marketing Amendment, and Moolec was a third-party beneficiary of that contract.

69.    The Marketing Agreement clearly states that EarlyBird's compensation fee consists of a fixed fee of $1 million, plus a variable fee consisting of 20% of the aggregate gross proceeds (i) held in the trust account on the day of the redemption deadline, and (ii) received by the SPAC in any financing in connection with a Business Combination, as well as up to $20,000 for reasonable costs and expenses.  Marketing Amendment ¶ 1.

70.    Therefore, EarlyBird is due a maximum of $1,417,802.21, which consists of the $1 million fixed fee, 20% of the gross proceeds in the trust account on December 28, 2022 ($397,792), 20% of the financing received by the SPAC ($0), and up to $20,000 in reasonable costs and expenses.

71.    Despite the clear operation of the Agreement's payment provision, EarlyBird seeks an exorbitant fee of $3 million, which has no basis in law or in fact under the plain terms of the Agreement.

72.    An actual, present and justiciable controversy exists between and among Moolec and EarlyBird.

73.    As a result of the dispute, EarlyBird refuses to provide its required consent to Continental for the transfer of the funds held in escrow the Trust Account, knowing and intending to prevent Moolec from accessing its funds.  Moolec has therefore been damaged by EarlyBird's conduct and continues to accrue damage each day it is prevented from accessing its funds.

74.    Moolec would suffer further damages if forced to pay an amount higher than what was agreed under the Marketing Amendment.

75.    For the foregoing reasons, Moolec seeks declaratory judgment from this Court that EarlyBird is owed a maximum of $1,417,802.21 under the Marketing Amendment and Marketing Amendment.

76.     Pursuant to Section 13 of the Marketing Agreement, Moolec also requests an award for the reasonable attorneys' fees and costs incurred in relation to the action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests (i) declaratory judgment that Defendant is owed no more than $1,417,802.21 under the Marketing Agreement and Marketing Amendment; and (ii) an award for the reasonable attorneys' fees and costs incurred in bringing this action (Moolec will submit supporting documentation detailing these fees at the conclusion of this action, or at any time the Court so requests); and other further relief as this Court may deem just and proper.

Dated:      New York, New York

February 10, 2023

Respectfully submitted,

LINKLATERS LLP

By:      */s/ Patrick C. Ashby*
James R. Warnot, Jr.
Patrick C. Ashby
Elizabeth M. Raulston
Stephanie R. Sebastian
1290 Avenue of the Americas,
New York, NY 10104
(212) 903-9000
(212) 903-9100 (fax)

*Attorneys for Moolec Science SA*